IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**RICHARD D. SULLIVAN** **PLAINTIFF**

**VERSUS** **CIVIL ACTION NO. 1:24-cv-00300-HSO-BWR**

**WILLIAM ANDERSON** **DEFENDANT**

# REPORT AND RECOMMENDATIONS

Pro se Plaintiff Richard D. Sullivan filed this lawsuit on September 30, 2024, raising claims under 42 U.S.C. § 1983 and state tort law. Compl. [1] at 3; Resp. [7] at 2. Plaintiff is an inmate housed at the Lenoir Rowell Criminal Justice Center in Poplarville, Mississippi, Env. [55-3] at 1, and he is proceeding *in forma pauperis*, Order [5]. Plaintiff is suing Agent William Anderson in his official and individual capacities. Compl. [1] at 2; Order [16] at 10.

Now before the Court are: (1) Plaintiff's Motion [44] for Preliminary Injunction and Temporary Restraining Order and (2) Agent Anderson's Motion [52] for Summary Judgment. The undersigned recommends that Plaintiff's Motion [44] for Preliminary Injunction and Temporary Restraining Order be denied. The undersigned recommends that Agent Anderson's Motion [52] for Summary Judgment be granted. Plaintiff's claims arising under federal law should be dismissed with prejudice, and his claims arising under state law should be dismissed without prejudice. The undersigned finally recommends that this case be closed.

## I. BACKGROUND

Agent Anderson worked for the Jackson County Sheriff's Department when

the following events occurred. Resp. [12] at 1-2; Resp. [55-2] at 1. On July 19, 2024, Agent Anderson served a search warrant on property owned by Allan Ladner in Ocean Springs, Mississippi. Att. [8] at 3. That property includes a "shed [that] is used for storage," and Plaintiff "store[ed] stuff in the shed along with about six others." *Id.* Plaintiff was not present at the time of the search. Resp. [7] at 1.

Though officers "had a key [to the shed]," they "used a bat[tering] ram [to open] the door." Att. [8] at 3. Once inside, officers found a "crystal substance," a revolver, and ammunition. *Id.* at 10. Plaintiff learned about the search later that morning, and he visited the property that afternoon. *Id.* at 3. Because it was "after 5:00 on [a] Friday," Plaintiff was unable to contact the officer listed on the search warrant return until Monday, July 22, 2024. *Id.* at 3-4; *see also* Att. [8] at 10.

On Monday, Plaintiff "got off work . . . a little early so he could meet . . . [with Agent] Anderson," though he did not expect "there [to be] to[o] much to it." Att. [8] at 4. When he arrived for their meeting, Plaintiff parked his "truck right [across] the street" from Agent Anderson's office. *Id.* Plaintiff "was arrested as soon as he walked into the . . . office." *Id.* He was charged with (1) possession of methamphetamine under Mississippi Code § 41-29-139(c)(1)(B), and (2) being a felon in possession of a firearm under Mississippi Code § 97-37-5. *Id.* at 1; *see also* Att. [8] at 11-12. Plaintiff's truck was then towed from its public parking space at Agent Anderson's instruction. Compl. [1] at 5; Resp. [55-2] at 12.

Plaintiff was indicted on November 20, 2024. Mot. [29-4] at 1-2. On September

5, 2025, Plaintiff pled guilty in the Jackson County, Mississippi, Circuit Court to: (1) possession of a controlled substance as a habitual offender, (2) possession of a controlled substance with intent, and (3) possession of a weapon by a convicted felon. Mot. [52-1] at 1-2. He was sentenced separately on each count, ultimately receiving a four-year total term of incarceration and a six-year total term of post-release supervision. *Id.*

Plaintiff raises ten claims against Agent Anderson: (1) violation of "due process;" (2) "unauthorized breaking into a shed;" (3) "false arrest;" (4) "false imprisonment;" (5) "abuse of power;" (6) "[unauthorized] [removal] of a vehicle from a public parking [space];" (7) "damage to private property;" (8) "unauthorize[d] removal of private property;" (9) "intentional infliction of emotional distress;" and (10) "malicious prosecution." Resp. [7] at 2.[1] He seeks $3,000.00 per day for each day of his incarceration at the Jackson County Adult Detention Center, along with $500,000.00 in punitive damages. Mot. [10] at 1-2. He also requests $600.00 to remove and replace the shed's door, $350.00 for damage to a camera system, and $350.00 for the towing of his truck, plus "court cost[s]." Compl. [1] at 5.

[1] In his summary-judgment Response, Plaintiff raises several claims that were not presented in the pleadings—including a claim against the circuit judge and the court reporter present during his criminal proceedings in state court. *E.g.*, Resp. [55] at 4-5; Resp. [55-1] at 1-2. The undersigned has only considered and analyzed claims raised in the pleadings. *See Cutrera v. Bd. of Super's of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the Court.").

## III. DISCUSSION

### A. Plaintiff's Motion [44] for Preliminary Injunction and Temporary Restraining Order

#### *i. Standard of Review*

"The purpose of a temporary restraining order (TRO) or preliminary injunction is to protect against irreparable injury and preserve the *status quo* until the court renders a meaningful decision on the merits." *Walker v. Hunt*, No. 1:17-cv-00027-RHW, 2017 WL 6327577, at *1 (S.D. Miss. Dec. 11, 2017). A party seeking this relief "must show the following: (1) a substantial likelihood that plaintiff will prevail on the merits; (2) a substantial threat that irreparable injury will result if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to defendant; and (4) that granting the preliminary injunction will not disserve the public interest." *Id.* (quotation omitted). "If the movant fails to carry its burden on any one of the four elements set forth above, the Court must deny the request for injunctive relief." *Miller v. Miss. Res., LLC*, No. 5:17-cv-00041-DCB-MTP, 2017 WL 2772097, at *2 (S.D. Miss. June 26, 2017).

"Temporary restraining orders and preliminary injunctions are extraordinary and drastic remedies, not to be granted routinely but only when the movant, by a clear showing, carries a burden of persuasion on all elements." *Id.* (quotation and alterations omitted). "[T]he enormity of the relief is difficult to overstate." *Trinity USA Operating, LLC v. Barker*, 844 F. Supp. 2d 781, 785 (S.D. Miss. 2011). "Except in extreme circumstances, federal courts are reluctant to interfere with matters of

prison administration and management, including prison transfer decisions." *Morris v. Howard*, No. 3:24-cv-3148-X-BW, 2025 WL 1839911, at *2 (N.D. Tex. June 18, 2025) (quotations and brackets omitted).

***ii. Analysis***

Plaintiff apparently asks the Court to issue an order requiring his custodians to change his housing assignment. When he filed his Motion [44] for Preliminary Injunction and Temporary Restraining Order on April 20, 2026, he was housed at the George/Greene County Correctional Facility in Lucedale, Mississippi. Mot. [44] at 1. At the time, Plaintiff had "been locked up for a year [with] no [rule violation reports]," so he believed that he should "already [be housed] at a CWC work camp." *Id.* He speculates that his custodians refused to change his housing assignment "because of the 1983 and now the habeas corpus petition [that he] filed." *Id.*

"[D]istrict courts within this circuit have found that a request for preliminary injunction must . . . be based on allegations related to the claims in the complaint." *Bucklew v. St. Clair*, No. 3:18-cv-2117-N (BH), 2019 WL 2251109, at *2 (N.D. Tex. May 15, 2019), *report and recommendation adopted by*, 2019 WL 2249719, at *1 (N.D. Tex. May 24, 2019); *see also Computer & Commc'ns Industry Assoc. v. Paxton*, 184 F.4th 420, 436 n.6 (5th Cir. 2026) (calling *Bucklew*'s standard a "sensible rule" and applying it). "[I]f a preliminary injunction 'deals with a matter lying wholly outside the issues in the suit,' the Court may not grant it." *Brown v. U.S., Dep't of Veterans Affairs*, No. 3:20-cv-00063-DPJ-FKB, 2021 WL 1842136, at *2 (S.D. Miss. May 7,

2021) (quoting *Power v. Starks*, No. 4:16-cv-00045-DMB-JMV, 2017 WL 2062940, at *1 (N.D. Miss. May 12, 2017)); *see also Schwartz v. U.S. Dep't of Justice*, No. 06-5581 (JBS), 2007 WL 2916465, at *3 (D.N.J. Oct. 4, 2007) ("When the movant seeks intermediate relief beyond the claims in the complaint, the court is powerless to enter a preliminary injunction.").

The allegations raised in this lawsuit have nothing to do with Plaintiff's housing assignment. In his Complaint, and in all pleadings filed since then, Plaintiff complains about the search on July 19, 2024, his arrest on July 22, 2024, and the fact of his subsequent incarceration. His request for injunctive relief concerns his housing arrangement almost two years after the events giving rise to this lawsuit occurred. "Without a relationship between the motion and his underlying allegations, the Court cannot grant [Plaintiff's] injunction." *See Brown*, 2021 WL 1842136, at *2.

Even if Plaintiff's request for injunctive relief related to his Complaint, he "has not met the requirements for a preliminary injunction or temporary restraining order." *See Roundtree v. Lopez*, No. 1:20-cv-00239-H, 2020 WL 7889065, at *2 (N.D. Tex. Nov. 20, 2020). To start, Plaintiff has cited no legal authority requiring his custodians to accommodate prisoners with desirous housing assignments for extended periods of good behavior. He has not shown "any threatened injury that outweighs the harm that the injunctive order might cause," nor has he overcome "the deference owed to prison administrators in operating a correctional facility." *See id.* "Finally, [Plaintiff] has not identified any public interest that would be served by

issuance of the injunction." *See id.* Thus, the undersigned recommends that Plaintiff's Motion [44] for Preliminary Injunction and Temporary Restraining Order be denied.

**B. Agent Anderson's Motion [52] for Summary Judgment**

***i. Standard of Review***

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). "In reviewing the evidence, the court must therefore refrain from making credibility determinations or weighing the evidence." *Id.* (quotation omitted).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence

of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and brackets omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with significant probative evidence." *Id.* (quotation omitted).

***ii. Analysis***

Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981). "It affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Id.* (quoting § 1983). The undersigned is of the opinion that Plaintiff has failed to allege and prove a constitutional violation.[2]

***a. Claims Arising Under Federal Law***

**1. Official Capacity**

"Suits against governmental officers or employees in their official capacity are,

[2] Finding no constitutional violation, the undersigned pretermits any discussion of qualified immunity. *See Est. of Parker v. Miss. Dep't of Pub. Safety*, 728 F. Supp. 3d 372, 385 (S.D. Miss. 2024) ("If the alleged conduct did not violate a constitutional right, the inquiry ends because there is no constitutional violation for which the government official would need qualified immunity.").

in reality, suits against the entity that the officer represents." *Clifford v. Harrison Cnty., Miss.*, 596 F. Supp. 3d 634, 642 (S.D. Miss. 2022). Thus, Plaintiff's official-capacity claims against Agent Anderson are truly claims against Jackson County, Mississippi. *See id.*

"Municipal liability for civil rights violations under § 1983 is based on causation rather than *respondeat superior*." *Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 548 (5th Cir. 2008) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 692 (1978)). Liability will attach "only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). "[T]o state a claim against a municipality under *Monell* and its progeny, [a plaintiff] must plead that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021) (quotation omitted). "The burden of establishing [a municipal-liability] claim is a heavy one." *Corring v. Pearl River Cnty.*, No. 1:11-cv-00262-RHW, 2013 WL 435970, at *5 (S.D. Miss. Feb. 4, 2013).

The undersigned is of the opinion that Plaintiff has failed to allege and prove the three elements required for establishing municipal liability. *First*, Plaintiff has offered no "summary-judgment evidence identifying any official policy that caused his constitutional violations." *See Amerson v. Pike Cnty., Miss.*, No. 3:09-cv-00053-DPJ-FKB, 2013 WL 53900, at *3 (S.D. Miss. Jan. 3, 2013). For example, Plaintiff has not

alleged and demonstrated that Jackson County maintains an official policy allowing the use of search warrants unsupported by probable cause. Nor has he "raised any evidence to show the sort of pattern of abuses" necessary to demonstrate a custom. *See Harris v. Jackson Cnty., Miss.*, 684 F. App'x 459, 463-64 (5th Cir. 2017); *see also Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009) (requiring a plaintiff to "demonstrate a pattern of abuses that transcends the error made in a single case" (quotation omitted)). His allegations merely represent what happened to him in one instance, and "isolated unconstitutional actions by municipal employees will almost never trigger liability." *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

*Second*, Plaintiff has failed to sue the final policymaker responsible for Jackson County's alleged misconduct. Plaintiff asks the Court to regard Agent Anderson as a final policymaker because of his extensive law-enforcement credentials. Resp. [55] at 19-20. But, in Mississippi, sheriffs are the "final policymakers with respect to all law enforcement decisions made within their counties." *Adelsheimer v. Carroll Cnty., Miss.*, 675 F. Supp. 3d 722, 730 (N.D. Miss. 2023) (quotation omitted). Yet Plaintiff has not sued Jackson County Sheriff John Ledbetter. Regardless, there is no evidence that Sheriff Ledbetter "promulgated, or even knew of, a policy or custom" that caused Plaintiff's alleged constitutional injuries. *See A&T Express, LLC v. Town of Prentiss*, No. 2:23-cv-00085-HSO-BWR, 2025 WL 3726773, at *3 (S.D. Miss. Nov. 12, 2025).

*Third*, Plaintiff has failed to establish an underlying constitutional violation,

as discussed in more detail below. *See infra* at 11-16. "Without an underlying constitutional violation, an essential element of municipal liability is missing." *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997). Accordingly, the undersigned recommends that Plaintiff's official-capacity claims against Agent Anderson be dismissed with prejudice.

**2. Individual Capacity**

The undersigned is of the opinion that at least five of Plaintiff's ten claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)—including violation of due process, false arrest, false imprisonment, abuse of power, and malicious prosecution. "In *Heck*, the Supreme Court held that if a plaintiff's civil rights claim for damages challenges the validity of his criminal conviction or sentence, and the plaintiff cannot show that such conviction or sentence has been reversed, invalidated, or otherwise set aside, the claim is not cognizable under § 1983." *Magee v. Reed*, 912 F.3d 820, 822 (5th Cir. 2019). "The *Heck* analysis . . . does not make an inquiry into the validity of the plaintiff's claims, but . . . considers whether they are inconsistent with a prior criminal conviction." *Jenkins v. Town of Vardaman, Miss.*, 899 F. Supp. 2d 526, 532 (N.D. Miss. 2012). "*Heck* requires the district court to consider 'whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'" *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006) (quoting *Jackson v. Vannoy*, 49 F.3d 175,

177 (5th Cir. 1995)). "This requirement or limitation has become known as the favorable termination rule." *Id.* (quotation omitted).

Plaintiff asks the Court to conclude that the search warrant executed by Agent Anderson on July 19, 2024, was not supported by probable cause. Resp. [55] at 3, 10. Thus, he believes that he was falsely arrested, falsely imprisoned, and maliciously prosecuted, which in turn amounts to a violation of due process and an abuse of power. *Id.* at 13. Were the Court to find in Plaintiff's favor on any of these points, it would necessarily imply the invalidity of the convictions and sentences arising from the search on July 19, 2024, and his arrest on July 22, 2024.

But Plaintiff pleaded guilty to drug- and weapons-related offenses arising from that arrest, and he was subsequently sentenced to a term of incarceration and post-release supervision. Mot. [52-1] at 1. Plaintiff's convictions and sentences have not "been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *See Heck*, 512 U.S. at 487. A review of the dockets in this Court, the Mississippi Supreme Court, and the Mississippi Court of Appeals revealed nothing that might call those convictions and sentences into question. *See Sullivan v. State of Miss.*, No. 2026-CP-00674-COA (Miss. Ct. App.) (briefing ongoing in Plaintiff's appeal from the state court's denial of post-conviction relief); *Sullivan v. State of Miss.*, No. 2026-CP-00617-COA (Miss. Ct. App.) (briefing ongoing in Plaintiff's appeal of the state court's denial

of his petition for writ of habeas corpus).

Thus, Plaintiff cannot maintain his false-arrest, false-imprisonment, and malicious-prosecution claims against Agent Anderson. *E.g.*, *Wells v. Bonner*, 45 F.3d 90, 94 (5th Cir. 1995) (false-arrest and malicious-prosecution claims precluded by *Heck*); *Nicholson v. Williams*, No. 3:08-cv-00212-HTW-LRA, 2008 WL 1913942, at *1-2 (S.D. Miss. Apr. 28, 2009) (false-arrest and false-imprisonment claims precluded by *Heck*). Since Plaintiff admits that his due-process and abuse-of-power claims are based on the alleged false arrest, false imprisonment, and malicious prosecution, Resp. [55] at 13, he cannot maintain these claims either. *E.g.*, *Legate v. Garcia*, 582 F. App'x 287, 288 (5th Cir. 2014) (similar due-process claim precluded by *Heck*); *Burgess v. Rivera Worley*, No. 4:17-cv-00782-ALM-CAN, 2018 WL 7137970, at *3-4 (E.D. Tex. Dec. 18, 2018) (similar abuse-of-power claim precluded by *Heck*), *report and recommendation adopted by*, 2019 WL 342152, at *1 (E.D. Tex. Jan. 28, 2019). The undersigned recommends that these claims be "dismissed with prejudice to their being asserted again until the *Heck* conditions are met." *See Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996).[3]

Moreover, the undersigned is of the opinion that Plaintiff's property-related claims are not cognizable under § 1983. To the extent he complains about damage to the shed and its camera system, Compl. [1] at 5; Resp. [7] at 2, Plaintiff lacks standing

[3] The undersigned has reviewed and considered Plaintiff's unauthorized sur-replies, Doc. [58] at 1-6; Doc. [60] at 1-3, and determined that nothing contained therein would change the recommended outcome.

to recover. "To establish standing in a civil rights case, the plaintiff must show (1) an injury in fact, defined as an invasion of a legally protected interest; (2) causation between the injury in fact and the defendant's actions; and (3) a likelihood that the plaintiff's injury will be remedied by the relief the plaintiff seeks." *Paz v. Hayden*, No. H-22-1898, 2024 WL 1719917, at *8 (S.D. Tex. Apr. 22, 2024). Plaintiff admits that the "shed belong[s] to Allan Ladner." Resp. [8] at 3; *see also* Resp. [55] at 14 (referring "to the private property of Allen [*sic*] Ladner"). "Because [Plaintiff] did not own the property, nor make an argument that he has an interest in the property, he cannot suffer an injury in fact under Article III." *Lunko v. City of Moss Point*, No. 1:26-cv-00018-LG-RPM, 2026 WL 2390180, at *2 (S.D. Miss. Aug. 17, 2026); *see also* *Paz*, 2024 WL 1719917, at *8 (dismissing property-damage claim under § 1983 where the plaintiff rented a room in a house damaged by police during a search).

To the extent Plaintiff complains about law enforcement entering the shed and removing property from the shed, Agent Anderson was acting pursuant to a facially valid search warrant. *See* Mot. [52-3] at 1-5. Any adjudication that renders the search of the shed and the seizure of its contents "unlawful" may render Plaintiff's subsequent convictions invalid. *See Murshid v. Pickett*, No. 3:19-cv-00822-FKB, 2023 WL 2925190, at *4 (S.D. Miss. Mar. 29, 2023). "Such result is not allowed by *Heck*." *See id.* Without evidence that Plaintiff's convictions and sentences have since been reversed, expunged, declared invalid, or otherwise called into question, "this claim is not cognizable under § 1983." *See id.* Though Plaintiff argues that the search

warrant was invalid, Resp. [55] at 14-15, the same result follows even if the search warrant was somehow faulty and the search itself was illegal. *See, e.g.*, *Mayo v. Smith*, No. 1:24-cv-00386, 2024 WL 3688369, at *1 (W.D. La. July 18, 2024), *report and recommendation adopted by*, 2024 WL 3681571, at *1 (W.D. La. Aug. 6, 2024); *Jewell v. Bartlett*, No. 3:19-cv-02667-N (BT), 2022 WL 1129910, at *3 (N.D. Tex. Mar. 14, 2022), *report and recommendation adopted by*, 2022 WL 1128957, at *1 (N.D. Tex. Apr. 15, 2022).

Finally, to the extent Plaintiff complains about the removal of his truck from its parking space, he reports that Agent Anderson acted "negligently." Resp. [55] at 14. But "[a]cts of negligence are not cognizable under § 1983." *Carrothers v. Kelly*, 312 F. App'x 600, 603 (5th Cir. 2009); *see also Patterson v. City of McComb, Miss.*, No. 5:18-cv-00074-DCB-MTP, 2018 WL 4956123, at *6 (S.D. Miss. Oct. 12, 2018) ("It is well settled that negligence, even gross negligence, does not implicate the Constitution and does not provide a basis for a Section 1983 claim."). Even if Agent Anderson acted intentionally, "neither negligent nor intentional deprivation of property violate[s] due process where there is an adequate state tort remedy available." *Jordan v. Johnston*, No. 2:09-cv-00244-KS-MTP, 2011 WL 3924825, at *7 (S.D. Miss. Aug. 18, 2011), *report and recommendation adopted by*, 2011 WL 3924836, at *1 (S.D. Miss. Sept. 6, 2011). "Mississippi provides post-deprivation remedies for both negligent and intentional conversions of property," *id.*, "including actions for conversion and claim and delivery," *Tolliver v. Mills*, No. 1:20-cv-00180-HSO-RHWR,

2022 WL 3053756, at *3 (S.D. Miss. May 23, 2022), *report and recommendation adopted by*, 2022 WL 3045316, at *3 (S.D. Miss. Aug. 2, 2022). Thus, Plaintiff might have a cause of action in state court, but he cannot recover on this claim under § 1983.

The undersigned recommends that Plaintiff's property-related claims arising under § 1983 also be dismissed with prejudice.

***b. Claims Arising Under State Law***

Considering the foregoing, the undersigned finally recommends that the Court decline to exercise supplemental jurisdiction over Plaintiff's ancillary state-law claims. "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c).

"[T]he preferred practice, when no extensive proceedings on the ancillary claim have begun in federal court, is to dismiss the [ancillary claims] so that the case may be brought in state court where it belongs." *Putnam v. Williams*, 652 F.2d 497, 502 (5th Cir. 1981); *see also Alphonse v. Arch Bay Holdings, L.L.C.*, 618 F. App'x 765, 769 (5th Cir. 2015) ("As a general rule, a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial."

(quotation and ellipsis omitted)). In determining whether to exercise supplemental jurisdiction, the Court also considers "judicial economy, convenience, fairness, and comity." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

Since no trial date has been set in this matter, "[a] state court is in a better position to adjudicate [Plaintiff's] claims arising under state law." *See Ellsberry v. Stewart*, No. 1:21-cv-00385-BWR, 2023 WL 2386706, at *8 (S.D. Miss. Mar. 6, 2023). Plaintiff's state-law claims should be dismissed without prejudice. *See Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999) ("[T]he dismissal of the pendent claims should expressly be *without* prejudice so that the plaintiff may refile his claims in the appropriate state court." (emphasis in original)).

## IV. RECOMMENDATIONS

The undersigned recommends that Plaintiff Richard D. Sullivan's Motion [44] for Preliminary Injunction and Temporary Restraining Order be denied. The undersigned recommends that Defendant Agent William Anderson's Motion [52] for Summary Judgment be granted. Plaintiff's claims arising under federal law should be dismissed with prejudice, and Plaintiff's claims arising under state law should be dismissed without prejudice.

## V. NOTICE OF RIGHT TO APPEAL/OBJECT

Within fourteen days of being served with a copy of this Report and Recommendation, any party may serve and file written objections with the Clerk of

Court. An objecting party must specifically identify the findings, conclusions, and recommendations to which it objects. Within seven days of service of the objections, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objections. L. U. CIV. R. 72(a)(3).

The District Judge shall make a *de novo* determination of those portions of the Report and Recommendation to which objection is made. The District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge may also receive more evidence or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1).

The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge will be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *See Wallace v. Miss.*, 43 F.4th 482, 494-95 (5th Cir. 2022) (collecting cases).

**SIGNED,** this 20th day of October, 2026.

s/ *Bradley W. Rath*

BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE